# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0474
Filed July 8, 2026

————————————

**In the Interest of R.G., Minor Child,**

**F.G., Father,**
Appellant.

————————————

Appeal from the Iowa District Court for Polk County,
The Honorable Kimberly Ayotte, Judge.

————————————

**AFFIRMED**

————————————

Heidi Miller of Des Moines Juvenile Public Defender, Des Moines,
attorney for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Jeremy Evans, Des Moines, attorney and guardian ad litem for minor child.

————————————

Considered without oral argument
by Ahlers, P.J., Langholz, J., and Doyle, S.J.
Opinion by Ahlers, P.J.

**AHLERS, Presiding Judge.**

A father's inability to tackle his alcohol-use problem led the juvenile court to terminate his parental rights to his child, born in 2020. The father appeals. He contends the juvenile court erred by (1) finding that the State established a statutory ground for termination; (2) finding that termination of his rights was in the child's best interests; (3) denying his request for additional time to work toward reunification; and (4) declining to establish a guardianship instead of terminating his parental rights.

We start with some history. The Iowa Department of Health and Human Services became involved with the family several years ago due to parental drug-use concerns. This led to a child-in-need-of-assistance (CINA) proceeding and eventual termination of the mother's rights. Despite concerns about the father's marijuana and alcohol use, the father regained custody of the child and the CINA case closed.

Juvenile court involvement became necessary again a few months later in July 2024. During a night of drinking, the father hit his neighbor with a car and then assaulted and held a gun to the neighbor's husband's head. The police had to break into the father's house to arrest him when he did not come out when prompted to do so. The child's half-sister was present during this encounter.

The incident led to a new CINA case. The father was initially allowed to keep custody of the child. But he continued to drink alcohol in violation of the terms of a safety plan and his probation on criminal charges. As a result, the child was removed from his custody. Despite repeated warnings from service providers and the juvenile court that continued use of alcohol would prevent reunification with the child, the father continued to drink.

This led to extended incarceration for probation violations and this termination-of-parental rights case.

## I. Standard and Process of Review

We review termination-of-parental-rights cases de novo. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc). Our review follows a three-step process of determining (1) whether a statutory ground for termination was established; (2) whether termination is in the child's best interests; and (3) whether a permissive exception to termination should be applied to avoid termination. *Id.* We do not address any step not challenged by a parent. *Id.* After addressing any challenges related to the three-step process, we then address any other claims. *Id.*

## II. Statutory Grounds

The juvenile court found that the State established a ground for termination of the father's parental rights under Iowa Code section 232.116(1)(f) (2026). Among other requirements, termination under paragraph (f) requires "clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parent[]." *See* Iowa Code § 232.116(1)(f)(4). "At the present time means at the time of the termination hearing." *In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024) (cleaned up).

On appeal, the father contends the State failed to prove that the child could not be returned to his custody at the time of the termination hearing. But this argument directly contradicts his testimony at that hearing. When he was asked whether he was in the position to be a full-time caregiver that day, he responded, "Today? Right now? It seems like we're talking about me trying to get better. Of course, I'm not." This admission alone is

sufficient to convince us that the State established this ground for termination. *See In re T.M.-L.*, No. 24-1818, 2025 WL 548851, at \*3 (Iowa Ct. App. Feb. 19, 2025). But even if it weren't, the other evidence in the record corroborates the father's admission and convinces us that the child could not be safely returned to the father's custody. A ground for termination was established.

## III.   Best Interests

The father also argues termination is not in the child's best interest because he and the child are bonded and termination would harm the child. His argument conflates a best-interest argument under the second step of our analysis with a permissive-exception argument under the third step. We interpret his argument as a best-interest argument under the second step.[1]

When assessing whether termination is in the child's best interest the court "give[s] primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Part of this analysis includes "whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family," the length of time the child has been with the stable foster family, and the desirability of

---

[1] We do so because his issue heading referenced only best interests and that is the thrust of his argument. *See L.A.*, 20 N.W.3d at 534 n.2. His passing reference to section 232.116(3)(c) in the body of his argument without more is insufficient identification, presentment, and development of the issue to avoid waiver or forfeiture of an argument based on section 232.116(3)(c). *See id.* If he intended to make both a best-interest and permissive-exception argument, he needed to separate the issue headings and arguments for each. *See id.*

maintaining that stability. *Id.* § 232.116(2)(b). These factors support termination here.

The father's alcohol use led to the violent incident that resulted in the latest CINA proceeding and the eventual removal of the child from his custody. Despite repeated warnings about the effect of his continued alcohol use and seeing the child's mother's rights terminated for similar reasons, the father downplayed the problematic nature of his alcohol use and its effect on his parenting capabilities. He did not participate in services until the eve of termination, when he claims he finally hit "rock bottom" and realized he needed to quit. Although we hope this realization sticks, his last-minute attempt at sobriety and therapy are not sufficient to stave off termination when adequate grounds have been established. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (finding progress two to three months before termination "simply too late" given the lack of progress in prior eighteen months).

Our conclusion is bolstered by the child's integration into her grandparents' home with her half-sister. *See* Iowa Code § 232.116(2) (noting that integration into a foster family is a factor to consider in the best-interest analysis); *see also id.* § 232.2(25) (defining foster care to include care provided by an adult relative). She calls the grandparents mom and dad, she continues to thrive socially and academically under their care, and they are willing to adopt her. Though we do not question that she is bonded to and loves her father, she has fully integrated into her grandparents' home over the lengthy period she has been there, and the grandparents provide a stable environment for her to thrive where she can also maintain contact with her sister.

For the above reasons, we agree with the juvenile court that termination of the father's parental rights is in the child's best interest.

5

## IV.    Additional Time

The father also argues the court erred in denying his request for additional time to work toward reunification. This is a permissible option if termination is denied. *See id.* § 232.117(5) (permitting entry of a permanency order under section 232.104 is termination is denied); *see also id.* § 232.104(2)(b) (providing a permanency option of granting additional time to work toward reunification). But we can only exercise this option when we can "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *See id.* § 232.104(2)(b). Like the juvenile court, we cannot conclude that changes will be made that will eliminate the need for removal within six months. The father continued to drink to excess to the point that he committed crimes while drinking, had his probation revoked for drinking, and subjected this child to two CINA cases. He continued to downplay his drinking problem and only ceased drinking when the permanency goal was changed to termination. Under these circumstances, the juvenile court was right to deny the father's request for additional time to work toward reunification.

## V.    Guardianship

Lastly, the father argues we should establish guardianship with the child's current placement in lieu of termination.[2] But guardianship is not

---

[2] To the extent the father argues guardianship is appropriate based on the exception in Iowa Code section 232.116(3)(a), we reject it because the child is in the custody of the department even though she is placed with the grandparents. *See In re A.B.*, 956 N.W.2d 162, 170 (2021) (concluding the exception applies only when the relative has legal custody rather than placement).

6

legally preferred over termination. *L.A.*, 20 N.W.3d at 533. And before establishing a guardianship, "the court must determine by clear and convincing evidence that termination of the parent-child relationship would not be in the best interest of the child[]." *In re L.B.*, No. 25-0113, 2025 WL 1177564, at *9 (Iowa Ct. App. Apr. 23, 2025) (cleaned up).

As already discussed, we find termination of the father's parental rights is in the child's best interests. Additionally, the child is young, and the father acknowledged his relationship with at least one of the would-be guardians is "rocky." *See L.A.*, 20 N.W.3d at 533 (citing a child's young age and bond to her foster parents as factors disfavoring guardianship); *L.B.*, 2025 WL 1177564, at *9 (citing a parent's poor relationship with the would-be guardians and the child's need for stability as factors disfavoring guardianship). Based on our de novo review, we agree with the juvenile court that a guardianship in lieu of termination is not warranted.

## VI. Conclusion

Having denied all the father's claims on appeal, we affirm the juvenile court's decision to terminate the father's parental rights.

**AFFIRMED.**